# CHARLESTON.

MATHEW ANDERSON *et al. v.* GEORGE SCHAFFNER *et al.*

Submitted January 31, 1922.   Decided February 7, 1922.

1. MINES AND MINERALS—*When Estate Created by Discovery of Oil or Gas Under Lease Subsists After Expiration of Term Stated.*

Although discovery of oil or gas by exploration therefor under a lease of land for oil and gas purposes vests an estate

or interest in such minerals for the specific term created by the lease and as much longer as they are produced from the land, provided the lease stipulates for such an extension, the estate or interest so vested, subsists, after expiration of the specific term, only upon condition that production continue thereafter, or, in the event of failure thereof by reason of accident deemed to have been within the reasonable contemplation of the parties, upon the exercise of a high degree of diligence to bring it about or restore it.   (p. 228). .

2. RECEIVERS—*When Receiver May be Appointed Under Oil and Gas Lease Stated.*

Cessation of production and work by the lessee, on leased premises upon which oil and gas have been discovered by means of a well drilled into the mineral bearing sands, for several months, after expiration of the specific term of the lease and in reliance only upon the extension clause thereof, makes a prima facie case of expiration of the lease; and, if the lessee, under such circumstances, declines to vacate the premises and large quantities of gas are escaping from the well and going to waste, a court of equity, upon the application of the lessor, may properly appoint a receiver to take charge of the well, machinery, tools and appliances used in connection therewith, for conservation of the well and its products, pending final determination of the rights of the parties.   (p. 228).

3. MINES AND MINERALS—*Use of Gas from Completed Well Not Sufficient to Keep Lease in Effect.*

In the case of cessation of production and work on a lease having an extension clause, for several months after expiration of the specific term thereby created, the use of gas from a completed well on the lease, not otherwise used, for domestic purposes, is not alone sufficient to keep the lease alive and in effect.   (p. 228).

4. RECEIVERS—*Question of Title to Property Need Not be Determined on Appointment of Receiver Under Oil and Gas Lease.*

For the purposes of such receivership created at the inception of litigation of that kind, it is unnecessary to determine the question of title to the movable property used in connection with the well, nor, assuming it to be in the lessee, the extent to which such property may be used by the receiver. It is the duty, and within the power, of the court, to determine the rights of the parties, respecting it, in the progress of the litigation, upon proper applications for interposition of its powers.   (p. 230).

Appeal from Circuit Court, Wetzel County.

Suit by Mathew Anderson and others against George Schaffner and others. Decree for complainants, and defendants appeal.

*Affirmed.*

*Charles C. Scott, R. S. Douglass,* and *Law & McCue,* for appellants.

*H. H. Rose,* for appellees.

POFFENBARGER, PRESIDENT:

By this appeal, the claimants of a lease on a 66 acre tract of land in Wetzel County, for oil and gas purposes, under which they drilled a productive well and ceased to operate it, seek abrogation of a receivership embracing the leased premises, the well and machinery, tools and appliances used in the drilling and operation of the well and left there, on cessation of the work on the premises:

The lease was executed, November 3, 1913, and created a short specific term which, at the date of the institution of this suit, had expired, but which subsisted at the date of discovery of both oil and gas in the land, by the drilling of the well. The discovery was so made in June, 1914, the well having been commenced in April of that year. Soon after the well reached the pay sand, it was shot, and the work of cleaning out was prosecuted until December 1914. There seems to have been some production of oil from it for a short time, but not more than five or six barrels per day. For sometime prior to April 1917, it seems not to have been pumped nor operated in any way. In that month, it was shot again, the shot resulting in a cave which necessitated "bridging" and drilling out. In this drilling, some tools were stuck, and "fishing" became necessary. Work on it was continued until December 17, 1917, when an accident killed one of the workmen. Soon thereafter, it ceased entirely. From the time the well was drilled in, a considerable quantity of gas has escaped daily. By some witnesses, the quantity is estimated at 250,-000 to 400,000 cubic feet per day.

Curtis B. Fleming was the lessee and the drilling was done

by the firm of Schaffner Brothers, under a contract providing for payment at the rate of $1.25 per foot. Under this contract, their compensation was $3,830.00, the depth of the well being 3,064 feet. They did the cleaning out at $20.00 per day for "single tour" work and $40.00 per day for "double tour" work. For this, their bill was nearly $3.000.00. All the machinery and tools used on the premises were theirs. Being unable to collect for their work, Jacob Schaffner, a member of the firm took, in his individual name, an assignment of the lease, by way of security, for the debt. The statements in this paragraph are taken from the verified answer of Schaffner Brothers, and there is no material conflict between them and the allegations and affidavits made and filed by the plaintiffs.

The averments of the answer as to the assignment of the lease, made in December, 1916, are not as definite as they might be, but they import an assignment to one member of the firm for the benefit of all. After repeated efforts to collect, it was taken "for the purpose of securing as far as possible the payment of Schaffner Brothers for the services" they had rendered; but there is no averment that it was taken only as security. In form, it seems to have been absolute. After procurement thereof, Schaffner Brothers worked at the well for a period of about eight months and it is not averred that this work was done under contract or for any person other than themselves. Apparently they were using their own machinery and tools in work on their own lease.

Many additional facts are set up by the pleadings and affidavits, as evidence of abandonment, on the one side, and in refutation thereof, on the other. As this appeal involves only an interlocutory order by which a receiver was appointed, and a *prima facie* case of right to such an order is disclosed upon a ground other than abandonment, it is unnecessary to detail them or to enter upon any inquiry as to whether the theory of abandonment is sustained.

In the present state of the record, a *prima facie* case of expiration of the lease by its own terms has been established. At the date of the institution of this suit, August, 1920, no work had been done on it for a period of about two years

and eight months. If it be true that, sometime in 1919, Schaffner Brothers went on the lease to resume work and were induced to desist therefrom by the lesssor, in view of her dependence upon the gas from the well for fuel and light and her illness, it remains that she died in September, 1919, and ten months elapsed between that date and the institution of this suit, in which work was not resumed. There is no averment of effort to resume it nor of obstruction to resumption thereof. In this conclusion, the fact that residents on the farm use gas from the well is not overlooked. In it, there is no substantial compliance with the requirement of production, as a condition upon which the lease may be continued beyond the specific term, unless it is aided by some other fact in the nature of an agreement. Nothing has been marketed from the lease, nor has any royalty been paid on either oil or gas. If there is any fact or circumstance which, in connection with the supply of gas for domestic use, would estop the plaintiffs from claiming expiration of the lease, it is in issue and the burden of proof rests upon the defendants. Their ability to establish it cannot be assumed.

Non-compliance with the letter of the extension clause of a lease of the kind now under consideration is excusable on the theory of compliance with its spirit and purpose, only when a high degree of diligence has been exercised by the lessee, in instances of technical delay or default under circumstances which the parties are presumed to have foreseen and contemplated, as being within the realm of probability, and as causing and justifying a delay or default not constituting termination. In no instance, has absolute cessation of work on the lease, attended by no production in the substantial sense of the term, been deemed to have been within the intention of the parties as expressed in the extension clause. On the contrary, in every case of disregard of such delay or default, the utmost diligence to bring about such production has been shown, and, even upon such showing, difficulty in sustaining the relation of landlord and tenant after expiration of the specific term, has been encountered. *South Penn Oil Co.* v. *Snodgrass,* 71 W. Va. 438; *Eastern Oil Co.* v. *Coulehan,* 65 W. Va. 531; *Ammons* v *Toothman,* 59 W. Va. 165; *Ohio Fuel*

*Oil Co.* v. *Greenleaf,* 84 W. Va. 67. As it now stands, the record does not disclose sufficient diligence on the part of the defendants, to amount to compliance with the requirement of the extension clause of the lease, under the most liberal construction of which it is susceptible.

As to the machinery, tools and appliances included in the receivership, the observations made in *Sult* v. *A. Hochstetter Oil Co.,* 63 W. Va. 317, 336, 337, suffice. From them, it is obvious that determination of the question of title to the personal property need not and cannot be determined at this stage of the litigation, and that title thereto in the defendants would not, under the peculiar circumstances, preclude temporary inclusion of some of it within the receivership. As to what particular articles should be so included, upon the theories of title in them and necessity of temporary use by the receiver, there has been no inquiry in the court below.

Upon these principles and conclusions, the decree complained of will be affirmed.

*Affirmed.*