William R. BUCKLES and Janice Deanne Buckles, husband and wife, Appellants,

v.

The WIL–MC OIL CORP. and Ran Ricks, Jr., Appellees.

No. 50113.

Supreme Court of Oklahoma.

Oct. 24, 1978.

WILLIAMS, Justice.

This is an appeal by plaintiffs from judgment for defendants in an action to terminate an oil and gas lease.

There is little dispute as to the facts. Plaintiffs are the owners of the surface and an undivided one half interest in the minerals in the Southwest Quarter of Section 3, Township 25 North, Range 13 West, Woods County, Oklahoma. On July 24, 1973, they (and, as to a portion, their predecessors in interest) executed oil and gas leases covering the entire quarter section to the defendant, Wil-Mc Oil Corporation. By their terms, the leases were to remain in force for two years " * * * and as long thereafter as oil or gas, or either of them, is produced from said lands *by the lessee*" (emphasis added). It also appears that Wil-Mc had leases covering most of the rest of Section 3.

On September 17, 1973, the Oklahoma Corporation Commission promulgated its Order No. 99876, designating Section 3 as a 640 acre drilling and spacing unit for the production of gas from the Red Fork (Cherokee) common source of supply, and allowing only one "permitted well" in the section.

Subsequent to the issuance of this order, Wil-Mc drilled a well on the Northwest Quarter of the Northwest Quarter of Section 3, which was completed as a dry hole. It is not denied that, in 1974, Wil-Mc paid the delay rentals required by the lease from plaintiffs on the Southwest Quarter.

Thereafter Wil-Mc entered into a "farm-out" arrangement with defendant Ricks, under which Ricks agreed to drill a well on Sec. 3. Under the evidence, this is a common practice in the industry. On March 27, 1975, when it was apparent that the well would be a producer, Wil-Mc, pursuant to the "farm-out" agreement, assigned its lease on the Southwest Quarter of Sec. 3 (and its other interests in Sec. 3) to Ricks, reserving an over-riding royalty interest. The well, drilled on the center of the Northwest Quarter of Sec. 3, was completed on April 30, 1975, with an initial potential of approximately 750,000 cubic feet of gas per

Downer, McDaniel & Bays, Richard R. Downer, Alva, for appellants.

Guy E. Taylor, William R. Burkett, Linn, Helms, Kirk & Burkett, Oklahoma City, for appellees.

day from the Red Fork (Cherokee) common source of supply. At time of trial, arrangements were being made for the construction of a gas pipe line by Del-Hi Gas Company, which has a gathering system in the area. It is tacitly conceded that the well drilled by Ricks is a producer, and that Ricks has used due diligence in his arrangements to market the production.

Plaintiffs' attack on the leases to Wil-Mc is based upon the fact that the "thereafter" clauses of the leases provide that production, in order to extend the primary 2-year term of the leases, shall be "by the lessee". They argue that since the well on Sec. 3 was drilled by Ricks and not by Wil-Mc, the leases expired by their own terms at the end of the two year primary period, under the holdings of this Court in *Earp v. Mid-Continent Petroleum Corporation*, 167 Okl. 86, 27 P.2d 855.

In that case, decided in 1933, this Court considered the relative rights of the parties to two separate leases on the same quarter section of land. The lease signed by the plaintiff lessor, who owned a 2/33 interest, had a "thereafter" clause requiring production "by the lessee", whose name was John Wagner. Under a different lease covering the other 31/33 interest, Mid-Continent drilled several producing wells on the quarter section, acting unilaterally and with no contract or agreement of any kind with Wagner. In holding that the drilling of the wells by Mid-Continent had not operated to extend the primary term of plaintiff's lease to Wagner, this Court said at page 864 of the Pacific Reporter, " * * * The contract being executed for the purpose of procuring development upon the premises *by the lessee* the clause should be interpreted to mean that the lessee is required to do the drilling and that the act of a third party *independent of any co-operation on the part of the lessee* is not in compliance with the terms of the lease". (Emphasis added). In the sixth paragraph of the syllabus by the court, it was held:

"The duration of a lease contract depends upon the terms thereof, and where a lessee has obtained an oil and gas lease upon a fractional portion of described premises, which lease contract provides that the same shall remain in full force for a term of five years, and as long thereafter as oil and gas, or either of them, is produced from the premises *by the lessee*. The drilling by a lessee under a *different* lease obtained from a *cotenant* of the lessor does not operate to extend the term of the lease beyond the five years therein provided unless there exists between the two lessees some *agreement* with reference to the development of the common property which in effect makes the drilling, development and production the act of *both* lessees." (Emphasis added).

In the case now before us, it cannot be said that the drilling of the well by Ricks was "independent of any cooperation", or without any agreement, from Wil-Mc. The Ricks well was drilled pursuant to the "farm-out" agreement with Wil-Mc, under which Wil-Mc was required to, and did, convey its working interest to Ricks when the well was brought in as a producer, reserving the over-riding royalty interest.

It is perhaps pertinent to note that *Earp*, and a companion case referred to therein which concerned the same leases (*Moody v. Wagner*, 167 Okl. 99, 23 P.2d 633) were both decided by applying general principles for the construction of contracts as applied to the rights of co-tenants, and it was not necessary for this Court to cite *any* section of *any* Oklahoma statute, or Corporation Commission order, concerning the production or conservation of oil and gas. In 1929, when these cases were tried, there was no statutory provision for drilling and spacing units, no statutory provision for pooling or communitization of interests, and no statutory provision authorizing regulation limiting the number of wells that might be drilled for the production of oil and gas.

For those reasons, and under the well settled principle that the applicable law is a part of every contract, the leases here concerned are very different from the one involved in *Earp*, even though they contain the same "thereafter" clause.

Also, the plaintiff leases to Wil-Mc contained a provision that "If the estate of either party hereto is assigned, and the privileges of assigning in whole or part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns * * ". By virtue of this provision it may be said that, with the assignment of the leases to Ricks during the primary term, Ricks became "the lessee" of whom production was required under the "thereafter" clause.

■ The leases here concerned also contained a clause providing in pertinent part that "All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules or Regulations, and the lease shall not be terminated * * * for failure to comply therewith, if compliance is prevented by * * * any such Law, Order, Rule or Regulation". When the well drilled by Ricks on the Northwest Quarter was completed as a producer during the primary term of the leases signed by plaintiffs, it became the "permitted well" for the entire section, and the drilling of another well was prevented by the terms of Corporation Commission Order No. 99876. For that reason, the failure of the lessee to drill a well physically located on the Southwest Quarter did not operate to terminate the leases.

The judgment of the trial court is affirmed.

LAVENDER, V. C. J., and IRWIN, BARNES, DOOLIN and HARGRAVE, JJ., concur.

BERRY, J., disqualified.