PAUL GOODWIN, *et al.*

*v.*

W. B. WRIGHT

(No. 13877)

Decided June 26, 1979.

*David G. Hanlon* for appellants.

No appearance for appellee.

HARSHBARGER, JUSTICE:

Paul and Dorothy Goodwin sued in the Circuit Court of Ritchie County on August 26, 1974, to void an oil and gas lease in which they were the lessors and R. N. Burgess was the original lessee. The lease was dated August 3, 1961. It was assigned to Wright on August 28, 1970. The lease was for ten years "and as long thereafter as oil or gas, or either of them, is produced form the said lands by the said Lessee, its successors and assigns." It also provided that free gas be furnished to lessors for domestic use and for "delay" rental of one dollar per

acre annually until "a well yielding royalty to the Lessors is drilled on the leased premises."

Plaintiffs originally sought to have the lease canceled because no oil or gas from wells on their property had been produced under the lease for more than four years before they filed suit, and the lease had expired by its own terms.

The parties admitted that no oil or gas was sold from 1970 when defendant purchased the lease to institution of plaintiffs' suit to cancel in 1974. Mr. Goodwin received no rental or royalty after "1968 or 1969," at least one year before the lease was assigned to defendant. But plaintiffs had free gas for their dwelling house granted by the lease. (They had the wells bailed in December of 1971 and again in December of 1974 in order to keep the gas supply operable. At the first bailing, Goodwin contacted Wright who told him that if he wanted gas, he would have to pay for the bailing; in 1974, Goodwin bailed the wells without notifying defendant.)

Both plaintiffs and defendant moved for summary judgment: plaintiffs alleged that the lease had expired by its own terms because defendant failed to produce any oil or gas after 1970; defendant, alleging free gas was a benefit to plaintiffs and extended the term.

The circuit court sustained defendant's motion:

> The court is of the opinion that the taking of gas by the plaintiffs from the well or wells on the lease prevents the term of the lease from being at an end, and therefore it is the judgment of the court that the defendant's motion for a summary judgment is sustained; judgment is granted in favor of the defendant, and this action is dismissed.

The first question is whether the term "produced" as used in oil and gas leases means "produced in paying quantities." The majority of the courts hold that it does.

*Garcia v. King*, 139 Tex. 578, 164 S.W.2d 509 (1942) held that the term "produced" is synonymous with "produced

in paying quantities." The court quoted from *Gypsy Oil Co. v. Marsh,* 121 Okla. 135, 248 P. 329 (1926)[1]:

> ' "Some authority may be found holding that, if a lease is to continue so long as oil or gas is produced, it is immaterial whether the lease is a paying one or not, for so long as the well drilled produces either oil or gas the lease continues. Thornton's Law of Oil & Gas, § 150, citing Gillespie v. Ohio Oil Co., 260 Ill. 169, 102 N.E. 1043. The construction there given the term 'produce' does not appeal to us, because the very purpose of the landowner in executing the lease is to have the oil and gas on the leased premises produced and marketed so that he may receive his royalty therefrom, and the purpose of the lessee is to discover and produce oil and gas in such quantities as will yield him a profit. These are material elements to be considered in the interpretation of the contract, and, if consideration is given these elements, it must be held that the word 'produce,' when used in this connection, means something more than mere discovery of a trace of oil or gas, or the discovery thereof in quantities so small as to render operation of the well unprofitable. Such a well would be of no benefit to either party." ' 164 S.W.2d at 511.

In *Garcia,* the Texas court decided that the lease involved had ended when oil and gas were no longer produced in paying quantities.[2] *See, 3 Williams on Oil and Gas Law,* § 604.5 (1977) and *2 Summers on Oil and Gas,* § 298 (1959).[3]

---

[1] In *Gypsy,* lessee had discovered oil in a shallow sand, but not in paying quantities. It was attempting to hold the lease beyond the primary term by producing from the sand, planning later, deeper exploration.

[2] "In order to understand and properly interpret the language used by the parties we must consider the objects and purposes intended to be accomplished by them in entering into the contract. The object ... was to secure development of the property for the mutual benefit of the parties. It was contemplated that this would be done during the primary period of the contract. So far as the lessees were concerned, the object in providing for a continuation

Here lessor received neither rental nor royalty and there was no attempt to produce and market the oil and gas. We have not upheld an extension of a lease beyond its basic term, when its continuation was predicted on

---

of the lease for an indefinite time after the expiration of the primary period was to allow the lessees to reap the full fruits of the investments made by them in developing the property. Obviously, if the lease could no longer be operated at a profit, there were no fruits for them to reap. The lessors should not be required to suffer a continuation of the lease after the expiration of the primary period merely for speculation purposes on the part of the lessees. Since the lease was no longer yielding a profit to the lessees at the termination of the primary period, the object sought to be accomplished by the continuation thereof had ceased, and the lease had terminated." 164 S.W.2d at 512.

[3]We are cited to *McGraw Oil & Gas Co. v. Kennedy*, 65 W. Va. 595, 64 S.E. 1027 (1909). A well was drilled and capped, and the producer paid lessor the amount of rental payments *as if he had sold the gas.* When subsequent leases from the property owner attempted to void the lease which was the authority for the drilling, we held that the lessee, paying $200 per year as the lease called for, as rental on "each gas well the product from which is marketed and used off the premises," could hold the lease even if he capped the well. Lessor's position was intact. Obviously the decision is not useful here, however.

We decided that a lease had not expired by its terms, even though production was not in paying quantities, in *McCutcheon v. Enon Oil & Gas Co.*, 102 W. Va. 345, 135 S.E. 238 (1926). [The suit was to cancel an oil and gas lease that was for 10 years and as long thereafter as oil or gas, or either of them, was produced.] There was a royalty for gas of $75 quarterly for each well from which gas was marketed and used off the premises. There was also a free gas clause and if a well was not completed within one year, a delay rental payment of $131.25 quarterly.

We found no expiration even though gas was "shut in" and both lessor and lessee were aware of this when they agreed to the lease.

Lessor treated it as a producing well. He used gas from it. Its production capacity was gauged at 1,500,000 feet per day; however, the lease does not in terms say the well must produce gas in "paying quantities and be marketed. Having no market, the lessee had the right to shut the gas in and pay the stipulated price. It would be of little concern to lessor what was done with the gas, if he gets his payments. [135 S.E. at 241]

Both cases upheld leases when there was no paying production, but both lessors received rental payments as though there was paying production, and in the same amount.

lessee development or production activities, where there was no work on the lease and no substantial production, or diligence seeking production. *See, Anderson v. Schaffner,* 90 W. Va. 225, 110 S.E. 566 (1922). *See also, Ohio Fuel Oil Co. v. Greenleaf,* 84 W. Va. 67, 99 S.E. 274 (1919); *South Penn Oil Co. v. Snodgrass,* 71 W. Va. 438, 76 S.E. 961 (1913); *Eastern Oil Co. v. Coulehan,* 65 W. Va. 531, 64 S.E. 836 (1909); *Ammons v. Toothman,* 59 W. Va. 165, 53 S.E. 13 (1906).

The lease should have been canceled. We agree with the majority rule that a lessor cannot remain bound to such a lease when it does not pay. "The objective of the lease is not merely to have oil or gas flow from the ground but to obtain production that is commercially profitable to both parties." *3 Williams on Oil and Gas Law,* § 604.5.

There is little authority on the second question— whether furnishing free gas for domestic use on the premises constitutes production sufficient to keep the lease in force after the primary term. We are cited to only one case directly on point. In *Metz v. Doss,* 114 Ill. App.2d 195, 252 N.E.2d 410 (1969), the lease was for one year "and as long thereafter as oil or gas, or either of them, is produced from said land by lessee." A well was drilled during the year and gas found, but it was not commercially produced. Lessors, however, did get free gas for domestic uses.

The court freed lessors who in nine years after the well was drilled received no commercial production income from the lease.

> The purpose of an oil and gas lease is to obtain production. Unless lessee obtains production he cannot recover his drilling expense. Lessor depends upon production for receipt of the royalty provided in the lease. This purpose can only be accomplished if the production which can keep the lease effective for an indefinite future period is production in the ordinary sense of the term and hence results in royalties to the lessor.

> From a reading of the entire instrument it is evident that the royalty provision is a primary matter, while the free gas, like the provision for burying lines below plow depth, is a secondary matter. [252 N.E.2d at 412]

Acceptance of free gas did not estop lessors to terminate the lease because "Under the terms of the lease, lessor was entitled to free gas and to have the lease terminate at the end of the primary term unless there was production. These rights are not in the alternative." Id. at 413.

This Court dealt with the issue in *Anderson v. Schaffner, supra.* We found that a *prima facie* case of expiration under the terms of the lease had been established. No work had been performed under the lease prior to suit being brought for at least 32 months. When the drilling firm returned to resume work, the lessor induced it not to because she was ill and depended upon gas from the well for domestic use. She died some time later, and between the time of her death and institution of the suit, 10 months passed and work was not resumed.

In concluding that the lease had expired by its terms, the Court noted:

> "[T]he fact that residents on the farm use gas from the well is not overlooked. In it there is no substantial compliance with the requirement of production as a condition upon which the lease may be contained beyond the specific term, unless it is aided by some other fact in the nature of an argument. Nothing has been marketed from the lease, nor has any royalty been paid on either oil or gas. If there is any fact or circumstance which, in connection with the supply of gas for domestic use, would estop the plaintiffs from claiming expiration of the lease, it is in issue and the burden of proof rests upon the defendants. Their ability to establish it cannot be assumed." [110 S.E. at 567]

Stated another way, supplying free gas for domestic use does not satisfy a duty to produce absent some other agreement, or facts that might keep lessors bound by estopping their complaint about lack of production, which we conclude means production in paying quantities.

We agree that the use of free oil or gas for domestic purposes does not, in itself, constitute production that will keep a lease in effect after the basic term. Because of the conclusions we have reached, this case is reversed and remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*