331 S.E.2d 823

**BERRY ENERGY CONSULTANTS AND MANAGERS, INC., a West Virginia Corporation, and Mountain State Drilling Association, a Pennsylvania Partnership**

v.

**James C. BENNETT and Joann Bennett.**

**James C. BENNETT, Joann Bennett and Nora M. Bennett**

v.

**W.B. BERRY, Berry Energy Consultants and Managers, Inc., a West Virginia Corporation, J & J Enterprises, Inc., a Corporation, Mountain State Drilling Association, a Pennsylvania Partnership, and Robert C. Smith, an Agent.**

No. 16315.

Supreme Court of Appeals of West Virginia.

Feb. 28, 1985.

Rehearing Denied June 11, 1985.

---

Patrick D. Deem and Evans L. King, Jr., Steptoe & Johnson, Clarksburg, for appellants.

Jerald E. Jones, Jones, Williams, West & Jones, Clarksburg, for appellees.

McHUGH, Justice:

This action is before this Court upon the petition of James C. Bennett, Joann Bennett and Nora M. Bennett for an appeal from the final order of the Circuit Court of Upshur County, West Virginia. The Bennetts, lessors, seek relief from the determination of the circuit court that an oil and gas lease upon the Bennetts' Upshur County property had not been abandoned by the lessees, W.B. Berry, et al.[1] This Court has before it the petition, all matters of record and the briefs and argument of counsel.

## I.

The interest of the lessees in the Bennett property is derived from a written lease agreement dated April 4, 1979. That lease was made for the purpose of "exploring and operating for" and "producing and marketing" oil and gas. The lease was to remain in force for one year and as long thereafter as the property was operated by the lessees "in the search for or production of oil, gas, or related products."

The lease provided, inter alia, that the Bennetts were to receive a royalty for the marketing of gas from their property. The Bennetts were otherwise to receive a "shut in royalty." Under the "shut in" provision, the lessees agreed as follows:

[T]o pay "shut in" royalty, on each date that royalty otherwise would be due as hereinabove provided, based on $300 per well per year, for each well producing gas only when the gas from such well is not sold, marketed or used off the premises for thirty (30) days or more beyond

the designated pay period, and upon such payment it will be considered that gas is being produced in paying quantities.

Furthermore, the lessees agreed under the lease to pay "rental" to the Bennetts at the rate of $25.00—"Quarterly in advance, beginning April 9/79...." The rental payments were to be made "until, but not after the date oil or gas is marketed from the leased premises. Any rental paid for time beyond that date shall be credited upon the first royalty due, and all rentals shall cease after the surrender of this lease as hereinafter provided for."

Finally, the Bennetts were entitled under the lease to "250,000 cubic feet per year [of gas from their property] for heat and light in one dwelling house...."

## II.

Gas was discovered upon the Bennett property, and in February 1980 a well was completed. The lessees began making to the Bennetts the $25.00 quarterly rental payments required under the lease.[2] In July 1982, however, the Bennetts informed the lessees in writing that the Bennetts considered the lessees to have abandoned the lease. The Bennetts took that action principally upon the belief that the lessees had wrongfully failed to market gas from the well. The Bennetts refused to accept further rental payments from the lessees, and the lessees were denied access to the property.

Separate actions asserting the respective rights of the parties under the lease were filed in the Circuit Court of Upshur County. Those actions were consolidated, and a trial without a jury was conducted in June 1983. Ruling in favor of the lessees, the circuit court stated in its final order that the April 4, 1979, lease between the parties

---

1. Under the oil and gas lease dated April 4, 1979, James C. Bennett, Joann Bennett and Nora M. Bennett were the lessors and W.B. Berry was the lessee. The interest of W.B. Berry in that lease was assigned to J & J Enterprises, Inc. Subsequently, the interest of J & J Enterprises, Inc., was assigned to Mountain State Drilling Association (a partnership). The "operator and nominee" of Mountain State

Drilling Association, concerning the Bennett property, was Berry Energy Consultants and Managers, Inc.

2. The $25.00 quarterly rental payments have been referred to by the parties in this action as "delay rental payments."

was a "valid and subsisting" agreement. The Bennetts appeal from that order.

The Bennetts assert that the lessees failed to pursue opportunities during the period in question to sell the gas.[3] Furthermore, the Bennetts assert that the lessees failed to pay the "shut in royalty" required under the lease.

On the other hand, the lessees assert that, until December 1982, they were unable to obtain a purchaser for the gas. As the complaint filed by the lessees in circuit court stated:

> From the time of completion of said well until the present, [lessees] have made diligent efforts to acquire a purchaser for the natural gas produced from said well; however, due to the unavailability of natural gas transmission pipelines in the area where said well is located, no gas purchase agreement could be obtained until December, 1982.

The lessees further assert that the Bennetts' acceptance (until July 1982) of the $25.00 quarterly rental payments negated the Bennetts' theory of abandonment of the lease. In addition, the lessees assert that the Bennetts were not entitled during the period in question to receive a "shut in royalty." In any event, the lessees assert, the failure to pay the "shut in royalty" would not justify the Bennetts' declaration of abandonment of the lease.

### III.

The question of abandonment by a lessee of a lease, such as the lease before this Court, is a matter of intent, and that intent may be determined by the lessee's conduct and declarations. *Smith v. Root,* 66 W.Va. 633, 639, 66 S.E. 1005, 1007 (1910). *See also* 38 Am.Jur.2d *Gas and Oil* §§ 208, 209 (1968). The determination of such an intent has been facilitated in West Virginia by statute. *W. Va. Code,* 36-4-9a [1979], provides a "rebuttable legal presumption" of intent to abandon where a lessee fails to produce and sell oil and/or gas from the leased premises. That statute provides, in part:

> There shall be a rebuttable legal presumption that the failure of a person, firm, corporation, partnership or association to produce and sell or produce and use for its own purpose for a period of greater than twenty-four months, subsequent to the first day of July, one thousand nine hundred seventy-nine, oil and/or gas produced from such leased premises constitutes an intention to abandon any oil and/or gas well and oil and/or gas well equipment situate on said leased premises, including casing, rods, tubing, pumps, motors, lines, tanks, separators, and any other equipment used in the production of any oil and/or gas from any well or wells on said leasehold estate.

The purpose of that statute, to give practical effect to leases for the production of oil and gas in this State, is in accord with prior decisions of this Court. For example, in *Parish Fork Oil Co. v. Bridgewater Gas Co.,* 51 W.Va. 583, 42 S.E. 655 (1902), this Court stated that oil leases:

> are executed by the lessor in the hope and with an expressed or implied condition that the land shall be developed and oil produced. When production takes place, the lease is mutually beneficial. The royalty, which it is stipulated in all these leases that the land owner shall receive, is generally the moving cause of the execution of the lease.

51 W.Va. at 591, 42 S.E. at 658. *See also Ohio Fuel Oil Co. v. Greenleaf,* 84 W.Va.

---

**3.** During the trial, James Bennett, a lessor in this action, testified as follows:

> Q. If you recall, when was the first time after the well was completed that Mr. Berry, people in association with him, made an effort to get onto the property for the purpose of marketing that gas?
>
> A. Sometime after July, 1982, after I wrote them a note and told them they broke their lease.

Furthermore, during the trial, the Bennetts called as a witness John Saffle, a production foreman employed by a company known as Eastern American Energy. Saffle indicated that during the period in question his company purchased gas from wells located near the Bennett property and that, upon proper agreement, such company would have purchased gas from the Bennett well.

67, 74, 99 S.E. 274, 277–78 (1919), the lessor's desire to receive royalties is a "material element to be considered in the interpretation" of oil and gas leases.

■ The "rebuttable legal presumption," provided by *W. Va. Code*, 36–4–9a [1979], of a lessee's intention to abandon is, however, subject to exceptions. *W. Va. Code*, 36–4–9a [1979], further provides:

This rebuttable presumption shall not be created in instances (i) of leases for gas storage purposes, or (ii) where any shut-in royalty, flat rate well rental, delay rental, or other similar payment designed to keep an oil or gas lease in effect or to extend its term has been paid or tendered, or (iii) where the failure to produce and sell is the direct result of the interference or action of the owner of such oil and/or gas or his subsequent lessee or assignee. Additionally, no such presumption shall be created when a delay in excess of twenty-four months occurs because of any inability to sell any oil and/or gas produced or because of any inability to deliver or otherwise tender such oil and/or gas produced to any person, firm, corporation, partnership or association.[4]

The lease in this action requires the payment by the lessees of shut-in royalties and delay rentals. *See* n. 2, *supra*.[5] That lease is dated April 4, 1979, and a gas well was completed in February 1980. Gas was discovered. In July 1982 the Bennetts declared that the lessees had abandoned the lease. However, prior to July 1982, the lessees tendered, and the Bennetts accepted, the delay rental payments. As discussed below, the question of the diligence

of the lessees in finding a market for the gas was never resolved in the trial court. Our task is to apply the provisions of *W. Va. Code*, 36–4–9a [1979], to the circumstances of this action.

■ Clearly, the presumption of intention to abandon is precluded by the lessees' payment and the Bennetts' acceptance of the delay rental payments. *W. Va. Code*, 36–4–9a [1979], provides that the "rebuttable legal presumption" of intention to abandon "shall not be created in instances ... where any shut-in royalty, flat rate well rental, delay rental, or other similar payment designed to keep an oil or gas lease in effect or to extend its term has been paid or tendered...."

In *McGraw Oil & Gas Co. v. Kennedy*, 65 W.Va. 595, 64 S.E. 1027 (1909), the parties entered into an oil and gas lease for five years "and so long thereafter as oil or gas, or either of them, is produced...." The lessees were to pay $200 yearly for "each gas well the product from which is marketed and used off the premises." Furthermore, the lease provided that the lessees drill a well within 12 months or pay $132 quarterly until a well should be drilled. The lessor received one payment in the amount of $132. Later, a gas well was drilled. Even though gas was never marketed by the lessees, the lessor received seven annual payments each in the amount of $200. The lessor, and others, asserted that the lease had been forfeited and abandoned.

This Court in *McGraw Oil & Gas Co.* determined that the lease had been neither forfeited nor abandoned. Noting that the lessor had never attempted to expel the

---

4. It should be noted that a lessee's interest in an oil and gas lease is inchoate and contingent until the discovery of oil or gas, but upon such discovery the right to produce becomes a vested right. *Arbaugh v. Raines*, 155 W.Va. 409, 412, 184 S.E.2d 620, 623 (1971); *McCutcheon v. Enon Oil & Gas Company*, 102 W.Va. 345, 351, 135 S.E. 238, 240 (1926), "When gas was produced from the land a vested estate accrued to the lessee."; syl. pt. 4, *Eastern Oil Co. v. Coulehan*, 65 W.Va. 531, 64 S.E. 836 (1909); *Parish Fork Oil Co. v. Bridgewater Gas Co.*, 51 W.Va. 583, 591, 42 S.E. 655, 658 (1902).

5. This Court, in *Davis v. Hardman*, 148 W.Va. 82, 89, 133 S.E.2d 77, 81 (1963), discussed the meaning of "delay rental" and "royalty" as follows:

"Carrying rentals" or "delay rentals" represent sums paid by the lessee to the lessor on an annual, quarterly or other basis for the privilege of postponing drilling or other operations under the lease; while a "royalty" is an agreed return paid for the oil, gas and minerals, or any of them, reduced to possession and taken from the leased premises.

*See also* 21A M.J. *Words and Phrases* at 393, 596–97 (Michie 1980).

lessees from the property, this Court stated: "Abandonment is not only not established, but plainly negatived, in this case. The lessees paid, and Evans [the lessor] received, for seven years the rental money for the well. * * * The lease was at different times conveyed from one to another as an existing lease." 65 W.Va. at 601, 64 S.E. at 1029.

In a later action, *Goodwin v. Wright*, 163 W.Va. 264, 255 S.E.2d 924 (1979), this Court held that an oil and gas lease should have been cancelled. In *Goodwin*, we noted that the lessor "received neither rental nor royalty and there was no attempt to produce and market the oil and gas." 163 W.Va. at 267, 255 S.E.2d at 926.[6]

*See also McGinnis v. Cayton*, 173 W.Va. 102, 312 S.E.2d 765 (1984).

This Court finds the above cases consistent with the language of *W.Va.Code*, 36–4–9a [1979], that the "rebuttable legal presumption" of intention to abandon by a lessee "shall not be created" in instances where delay rental has been paid or tendered.[7] The lessees in this action made the delay rental payments during the period in question. Such payments contradict the assertion of the Bennetts that the lessees abandoned the lease. In *McCutcheon v.*

*Enon Oil & Gas Company*, 102 W.Va. 345, 135 S.E. 238 (1926), this Court noted: "The intention to abandon may be implied from the circumstances. * * * But the implied intention must clearly appear." 102 W.Va. at 351, 135 S.E. 240.[8]

However, in spite of the making of the delay rental payments, the lessees in this action had an obligation to be reasonably diligent in marketing the gas. As indicated above, the parties entered into the lease for the purpose of "exploring and operating for" and "producing and marketing" oil and gas. In this action, a well was drilled, and gas was discovered.

As this Court held in syllabus point 4 of *Eastern Oil Co. v. Coulehan*, 65 W.Va. 531, 64 S.E. 836 (1909):

The discovery of oil or gas under a lease giving right of exploration and production, unless there is something in the lease manifesting a contrary intention, is sufficient to create vested estate in the lessee in the exclusive right to produce oil or gas provided for therein—a right, however, which may be lost by abandonment, by failure to produce oil or gas, or pursue the work of production, or development of the property.[9]

---

**6.** Syllabus point 2 of *Goodwin v. Wright, supra,* states:

When a well is not producing in paying quantities and no royalties or rentals are being received by the lessors, these being required by the terms of a lease as necessary to its continuation, receipt by lessors of free gas for domestic purposes from the well does not constitute consideration sufficient to keep lessors bound by the lease, nor does it amount to "production."

**7.** The Bennetts have asserted that the lessees should have paid, during the period in question, shut-in royalties, rather than delay rental payments. We do not, however, reach that issue. Our discussion in this action is concerned with whether, under *W.Va.Code*, 36–4–9a [1979], a presumption of abandonment by the lessees has been raised. Upon the record before this Court, that presumption issue is resolved solely upon the delay rental and diligence in marketing questions. As *W.Va. Code*, 36–4–9a [1979], indicates, the payment or tender of either shut-in royalties or delay rental precludes the presumption of intention to abandon. *See* Annot., 96 A.L.R.2d 345 (1964).

**8.** In syllabus point 1 of *Keller v. Model Coal Company*, 142 W.Va. 597, 97 S.E.2d 337 (1957), this Court held: "Forfeitures are not favored in courts of equity and will not be declared or enforced at the instance of a lessor, in the absence of forfeiture provisions in a lease, unless the facts show an abandonment of the enterprise by the lessee." Moreover, in *Parish Fork Oil Co. v. Bridgewater Gas Co.,* 51 W.Va. 583, 592, 42 S.E. 655, 658 (1902), this Court recognized that equity abhors a forfeiture, but not where a forfeiture protects a landowner from the laches of a lessee. *See also Bethlehem Steel Corp. v. Shonk Land Co.,* 169 W.Va. 310, 288 S.E.2d 139 (1982).

**9.** This Court, in *Parish Fork Oil Co. v. Bridgewater Gas Co.,* 51 W.Va. 583, 591, 42 S.E. 655, 658 (1902), stated:

After the discovery of oil in paying quantities, it is held that title does vest in the lessee, but there is no case which goes so far as to announce that after mere discovery of oil, the lessee, upon the assumption of a vested interest or title, may cease operation, refuse to develop the property, tie up the oil by his lease and simply hold it for speculative pur-

98

Furthermore, as this Court held in syllabus point 2 of *Jennings v. Southern Carbon Co.*, 73 W.Va. 215, 80 S.E. 368 (1913):

A lease which reserves to the lessor substantial royalties in kind and in money on the oil produced and saved and the gas used off the premises as the consideration and inducement for the lease, and which, while expressly requiring the drilling of one well during the first five years, does not by express terms define the measure of diligence to be exercised after the expiration of that period, contains a covenant by the lessee, arising by necessary implication from the nature of the lease and the character of the minerals sought, that if, during the five years allowed for original exploration and development, oil or gas or both are found in paying quantities, the work of development and production shall be continued with reasonable diligence, to the end that the extraction of oil and gas from the lands leased shall be mutually advantageous and profitable to the lessor and lessee.[10]

Of course, it should be noted that relevant to the obligation of the lessees to be reasonably diligent in the marketing of gas from the Bennett property is the language of *W. Va. Code*, 36–4–9a [1979], that no "rebuttable legal presumption" that a lessee intends to abandon an oil and/or gas well shall be created "when a delay in excess of twenty-four months occurs because of any inability to sell any oil and/or gas produced or because of any inability to deliver or otherwise tender such oil and/or gas produced to any person, firm, corporation, partnership or association."

▮ Therefore, upon all of the above, we hold that under the provisions of *W. Va. Code*, 36–4–9a [1979], a "rebuttable legal presumption" that a lessee intends to aban-

don an oil and/or gas well shall not be created, where the lessee has paid or tendered "delay rental" for the leased premises. Where, however, a lessor and a lessee have entered into a lease for the purpose of "exploring and operating for" and "producing and marketing" oil and gas, and a well has been drilled by the lessee and gas discovered, the payment or tender by the lessee of delay rental for the leased premises does not relieve the lessee from an implied obligation to exercise reasonable diligence in marketing gas from the leased premises.

During the trial of this action, the Bennetts submitted evidence to the effect that the lessees failed to exercise reasonable diligence concerning the marketing of gas from the Bennett property. *See* n. 3, *supra.* The lessees, however, obtained a judgment in circuit court upon the question of abandonment, without submitting evidence upon the marketing issue. That issue, as can be seen in the record before this Court, involves a question of fact which was never specifically addressed by the trial judge. We, therefore, remand this action to the circuit court for a resolution of the marketing issue.

For the reasons stated in this opinion, we hereby reverse the judgment of the Circuit Court of Upshur County and remand this action to that court for a determination of whether during the period in question the lessees exercised reasonable diligence in attempting to market gas, under the lease of April 4, 1979, from the Bennett property.

Reversed and remanded.

---

poses, or to await his own pleasure as to the time of development.
*See also Ohio Fuel Oil Co. v. Greenleaf,* 84 W.Va. 67, 75, 99 S.E. 274, 278 (1919).

**10.** In syllabus point 4 of *Jennings v. Southern Carbon Co., supra,* this Court held:

Where the object apparently contemplated by both parties to an oil and gas lease, at the date thereof, is to obtain, from the lands

leased, a benefit or profit as a result of operations thereunder, neither is, in the absence of a stipulation to that effect, the arbiter of the extent to which or the diligence with which, the operations shall proceed; but both are bound by that degree of diligence which, under the circumstances, would be reasonably expected of operators of ordinary prudence, having regard for the interests of both.