422 S.E.2d 503

**CHRISTIAN LAND CORPORATION,**
Plaintiff Below, Appellant,

v.

**C. & C. COMPANY and Roy Grimmett,**
Defendant Below, Appellee.

No. 20721.

Supreme Court of Appeals of
West Virginia.

Submitted April 29, 1992.

Decided July 23, 1992.

Christopher S. Smith, Hoyer, Hoyer & Smith, Charleston, for appellant.

John A. Rollins, Lewis, Friedburg, Glasser, Casey & Rollins, Charleston, for appellee.

PER CURIAM:

This is an appeal by Christian Land Corporation (hereinafter referred to as "Christian Land" or "the appellant") from a March 7, 1992, final order of the Circuit Court of Logan County which granted the appellant damages but denied the appellant's request that the rights of the appellee, C. & C. Company (hereinafter referred to as "C. & C." or "the appellee"), under a coal lease be forfeited. Only the lower court's ruling regarding forfeiture is the subject of this appeal. The appellant contends that the lower court erred in denying the appellant's request that C. & C.'s rights under the lease be forfeited. We conclude that C. & C.'s rights under the lease were not forfeited, but rather that C. & C. abandoned the leasehold and thereby lost its rights to the property.

I.

Christian Land and C. & C. entered into a written lease agreement, dated May 1, 1975, whereby Christian Land leased property located in Tridelphia District, Logan County, West Virginia to C. & C. The lease required a minimum annual royalty and provided that C. & C. would mine coal in an effective and workmanlike manner and comply with all applicable state and federal laws relating to coal mining. Specifically, the lease provided as follows:

Lessee agrees that it will mine the coal demised in an effective and workmanlike manner, according to approved and suitable methods of modern mining, with adequate, efficient and sufficient mining machinery, equipment and personnel, and shall at all times fully comply with and observe all applicable laws and lawful rules and regulations of the state of West Virginia and of the United States of America pertaining to the operation of coal mines and shall keep and maintain said mines in good operating and working order.

C. & C.'s surface mining permit was revoked by the West Virginia Department of Energy in January 1990, and its underground permit was revoked on April 24, 1990. The permits were to be reinstated only if C. & C. remedied specific defaults or otherwise complied with statutory requirements and Department of Energy regulations. C. & C. has not complied with such statutes and regulations to date. Christian Land filed a complaint in November 1989 requesting damages and forfeiture of the leased property. The matter was tried before the Circuit Court of Logan County, without a jury, on September 18, 19, and 20, 1990. The lower court entered judgment in favor of Christian Land for damages, but denied Christian Land's request that C. & C.'s rights under the lease be forfeited as a result of C. & C.'s failure to comply with the reclamation laws of this state and its loss of mining permits.

Christian Land filed post-trial motions on March 15, 1991, requesting, among other things, that C. & C. be required to timely pay the royalties due under the lease and to comply with the mine reclamation laws of this state as a condition to avoiding forfeiture of the lease. After hearings on this matter, the lower court amended its original order to provide that C. & C.'s timely payment of royalties was a condition of its continued possession of the leased premises. The court also held a hearing on June 19, 1991, regarding the forfeiture issue. The lower court's final ruling is memorialized in an amended order entered on July 19, 1991. In that amended order, the lower court held that noncompliance with the mining laws is not grounds for forfeiture under the terms of the lease agreement. Consequently, the lower court did not declare a forfeiture of the lease and did not make compliance with state mining laws a condition precedent to continued possession of the leased premises.

On February 14, 1992, the United States Bankruptcy Court for the Southern District ("bankruptcy court") of West Virginia entered an order granting an involuntary

bankruptcy petition against C. & C. The bankruptcy court also entered an order granting Christian Land relief from the automatic bankruptcy stay provisions in order that Christian Land could prosecute this appeal. Because C. & . C. listed its lease with Christian Land as an asset of the bankruptcy estate on its Schedule of Assets, our ruling in this appeal will assist the bankruptcy court in determining the issues before it.[1]

On May 6, 1992, the bankruptcy court authorized C. & C. to abandon its interest in the leasehold estate of the property leased from Christian Land Corporation, effective April 1, 1992, and ordered that C. & C. would have no continuing obligation to make lease payments or maintain any interest in the property thereafter. That order specifically noted that the finding of abandonment would not moot the matters on appeal before this Court.

C. & C. contends that although Christian Land's stated reason for its request of forfeiture is the alleged leasehold default, the compelling factor behind Christian Land's suit is its desire to have the lease considered terminated in order to place Christian Land in a position to claim a greater share of a settlement received in a separate litigation. C. & C. and Christian Land were both plaintiffs in a civil action filed by them against Island Creek Corporation regarding a trespass on the property owned by Christian Land and leased by C. & C.[2] The distribution of the proceeds from the settlement of that matter will depend, in part, upon the resolution of this appeal and, specifically, a ruling on whether the lease was forfeited.

## II.

The bankruptcy court, as explained above, has already determined that the lease is to be deemed abandoned. That determination does not moot this appeal, however, because the issue of a possible previous forfeiture still remains unsettled. Christian Land contends that the lease was forfeited when C. & C., as lessee, breached a covenant in the lease agreement. Specifically, Christian Land alleges that C. & C. breached its duty to maintain the mine in good operating and working order and to comply with the laws relating to coal mining. The loss of underground and surface mining permits, Christian Land argues, constitutes evidence of failure to maintain the mines in good operating and working order and failure to comply with mining laws. Christian Land further contends that when C. & C.'s mining permits were revoked, C. & . C. lost its ability to mine coal. Since the mining of coal and the operation of the mine in an effective manner were the purposes of the lease, Christian Land contends that C. & C.'s inability to mine coal constituted a breach of the covenants of the lease and should have resulted in forfeiture.

C. & C. emphasizes, however, that the lease does not require it to develop any mines on the property, to mine any particular amount of coal, or to otherwise maintain any production. The lease simply requires a minimum annual royalty that is payable regardless of whether any coal is mined. Furthermore, C. & C. contends that forfeiture may only result through the three mechanisms specified in the lease agreement: 1) nonpayment of rent or royalties or other sums due under the lease; 2) breach or violation of any terms or provisions of the lease; or 3) reassignment or subletting of the lease without Christian Land's consent.

In its July 19, 1991, amended order, the lower court found that noncompliance with reclamation laws was not specifically delin-

1. The Department of Energy apparently estimated that the cost of reclamation of the property would be $222,295. Reclamation by an independent contractor hired by the state has been completed at a cost of $281,000, after the deduction of the $57,000 reclamation bond posted by C. & C. Including the civil penalties of $111,000, the total claim asserted by the State in C. & . C.'s bankruptcy case is approximately $392,000.

2. C. & C. emphasizes, however, that the facts relating to the Island Creek settlement and the bankruptcy proceedings are not part of the record on this appeal, and that C. & C. does not rely on those facts as exclusive support for its position in this appeal.

eated as a ground for forfeiture under the lease. Furthermore, the lower court found that Christian Land was not entitled to the requested forfeiture under the general clause allowing forfeiture for breach or violation of any lease terms or provisions. The court opined that such clause constituted a catch-all clause of the type condemned by this Court in *Easley Coal Co. v. Brush Creek Coal Co.*, 91 W.Va. 291, 112 S.E. 512 (1922), and *Bethlehem Steel Corp. v. Shonk Land Co.*, 169 W.Va. 310, 288 S.E.2d 139 (1982). In *Easley*, we dealt with a dispute involving a condition against assignment and determined that the assignment by the lessee did not constitute a forfeiture. In so doing, we explained the following:

> Forfeitures of estates are not favored in law. The right to forfeit must be clearly stipulated for in terms, else it does not exist. Every breach of a covenant or condition does not confer it upon the injured party. It never does, unless it is so provided in the instrument. Such breaches are usually compensable in damages, and, if a forfeiture has not been stipulated for, it is presumed that the injured party intended to be content with such right as is conferred by the ordinary remedies. The broken covenant or condition relied upon for forfeiture must be found not only in the instrument, by clear and definite expression, but also within the forfeiture clause, by such expression. A covenant or condition merely implied, or an express one not clearly within the forfeiture clause, will not sustain a claim of forfeiture by reason of its breach.

91 W.Va. at 296–97, 112 S.E. at 514.

In discussing the issue of forfeiture in *Bethlehem Steel*, we stated that:

> [a]nother principle to be observed is that, in so far as a covenant is relied upon to sustain a claim of forfeiture, it is always strictly construed in respect of that claim. The instrument must give the right of forfeiture in terms so clear and explicit as to leave no room for any other construction, or it does not exist. . . .

> When the right has been clearly and unequivocally secured by the terms of the contract, it does not accrue unless nor until there has been an equally clear and unequivocal breach of the condition.

*Bethlehem Steel*, 169 W.Va. at 315, 288 S.E.2d at 142.

In *Bethlehem Steel*, the clause upon which the lessor attempted to rely to support a forfeiture provided as follows: "If . . . default shall be made by Lessee in the performance of any other covenant or condition herein contained . . . the Lessor, at its option may . . . (a) declare a forfeiture. . . ." *Id.* at 315–16, 288 S.E.2d at 143. We concluded the following in *Bethlehem Steel*,

> This nonspecific reference to breached covenants does not meet the strict standards for valid forfeiture clauses in *Easley Coal, supra.* Its language, which we emphasized, requires that a covenant relied upon for raising forfeiture be clearly and definitively expressed in a forfeiture clause. A catchall, dragnet forfeiture clause for breach of any contractual covenant is inadequate.

*Id.*

We do not believe that forfeiture is the appropriate remedy in the present case. As explained above, the lease specified the three scenarios from which forfeiture could result: (1) nonpayment of rent or royalties or other sums due under the lease; (2) breach or violation of any lease terms or provisions; or (3) reassignment or subletting of the lease without Christian Land's consent. Noncompliance with reclamation laws and subsequent loss of mining permits was not specifically made a ground for forfeiture under the lease. Consistent with our previous evaluation of forfeiture issues, we maintain that the right to forfeit must be clearly and succinctly expressed in the lease agreement. A "catch-all" clause such as (2) above, similar to the one in *Bethlehem Steel*, will not be sufficient to justify a forfeiture. Based upon that analysis, we do not believe that a forfeiture

occurred in the present case.[3]

■ We do, however, view this situation in light of abandonment principles and hold that C. & . C. did indeed abandon its interest in Christian Land's property. This principle is particularly relevant since one of our primary concerns as we address this situation is to prevent an innocent landowner from becoming an unwilling participant in a struggle between a lessee and an entity enforcing mining requirements and regulations. We have previously explained, in considering general mineral leases, that a lessee's action or inaction may trigger termination of a lease for failure to diligently pursue operations. In syllabus point 4 of *Eastern Oil Co. v. Coulehan*, 65 W.Va. 531, 64 S.E. 836 (1909), for example, we explained:

The discovery of oil or gas under a lease giving right of exploration and production, unless there is something in the lease manifesting a contrary intention, is sufficient to create vested estate in the lessee in the exclusive right to produce oil or gas provided for therein—a right, however, which may be lost by abandonment, by failure to produce oil or gas, or pursue the work of production, or development of the property.

■ We further stated in *South Penn Oil Co. v. Snodgrass*, 71 W.Va. 438, 76 S.E. 961 (1912), that abandonment sufficient to destroy the vested interest created by the discovery of oil or gas under a lease will not be found so long as the lessee diligently and efficiently operates the leased premised to produce the oil and gas located thereon. *Id.* at 452, 76 S.E. at 967. In syllabus point 1 of *McCullough Oil, Inc. v. Rezek*, 176 W.Va. 638, 346 S.E.2d 788 (1986), we explained:

An oil and gas lease (or other mineral lease) is both a conveyance and a contract. It is designed to accomplish the main purpose of the owner of the land

and of the lessee (or its assignee) as operator of the oil and gas interests: securing production of oil or gas or both in paying quantities, quickly and for as long as production in paying quantities is obtainable.

■ While short term cessations of development may not be sufficient to terminate a lease, we discussed the temporary cessation doctrine in *McCullough Oil* and indicated that in the absence of a cessation of production clause, factors to be considered in assessing the feasibility of termination of the lease included the following: the length of time without production, the cause of the delay, and whether the lessee exercised reasonable diligence to resume production. *Id.* at 644, 346 S.E.2d at 794. In the present case, these factors—length of time, cause, and reasonable diligence questions—are applicable to development or inability to continue exploration due to lack of mining permits. Upon loss of its mining permits, C. & C. became ineligible to continue development. If the reclamation situation had been remedied within a reasonable period after the loss of permits, we would be in a position to conclude that C. & C.'s loss of mining permits constituted a temporary cessation and that C. & C. had not abandoned its lease. C. & C., however, allowed this situation to linger and thereby occasioned unreasonable delay to Christian Land. Such extended delay cannot be tolerated, and relief in the form of abandonment must be extended to the landowner.

In *Berry Energy Consultants and Managers, Inc. v. Bennett*, 175 W.Va. 92, 331 S.E.2d 823 (1985), we addressed the issue of alleged abandonment of an oil and gas lease and confronted West Virginia Code § 36–4–9a (1985). That statute imposes upon the lessee a "rebuttable legal presumption" of intention to abandon when the property has not been developed for a period of twenty-four months.[4] If, howev-

---

3. We hasten to add, however, that we view strict compliance with environmental laws as a justifiable concern and potential topic for leases such as the one in the present case. Noncompliance with such laws could certainly be made the basis for forfeiture if that issue were clearly

addressed in the forfeiture provisions of the lease agreement.

4. West Virginia Code § 36–4–9a, in pertinent part, provides as follows:

er, a delay rental has been tendered, the presumption of abandonment is not created. *Berry Energy, Id.* at 96, 331 S.E.2d at 827. We recognized in *Berry Energy,* however, that "in spite of the making of the delay rental payments, the lessees in this action had an obligation to be reasonably diligent in marketing the gas." *Id.* at 97, 331 S.E.2d at 828.

In the present case, our review of the record reveals C. & . C.'s failure to exercise reasonable diligence concerning the development of the coal reserves in the property owned by Christian Land. In its treatment of the abandonment issue with regard to oil and gas leases, the legislature has determined that twenty-four months of inactivity is an appropriate time period after which abandonment will be presumed. W.Va. Code § 36-4-9a. While we do not find it necessary in the present case to enunciate a precise time limitation regarding inactivity subsequent to loss of mining permits, we do recognize and adopt the determination of the bankruptcy court with regard to abandonment by the lessee. C. & . C.'s surface mining permit was revoked in January 1990, and its underground mining permit was revoked on April 24, 1990. According to the information available to this Court, C. & . C. would have been permitted to regain eligibility to mine coal upon compliance with Department of Energy regulations and the payment of civil penalties. The bankruptcy court authorized formal abandonment effective April 1, 1992.

Recognizing C. & . C.'s potential for correction of the problems surrounding the loss of mining permits, it would be inequitable to hold that C. & . C. abandoned its lease on the very day it became ineligible to mine coal. However, as that period of ineligibility progressed, the equities shifted toward the landowner. We believe that C. & . C.'s failure to diligently pursue its options to regain eligibility to mine coal from the date of its final loss of permits on April 24, 1990, to the ruling of the bankruptcy court regarding abandonment effective April 1, 1992, clearly constituted an abandonment of the lease and the leased premises. The passage of almost two years prior to the bankruptcy court's ruling certainly gave C. & C. the benefit of any doubt regarding the abandonment issue and also provided a reasonable time period for the lessee to make attempts to correct any impediments to production or the development of the property in question.

Based upon this analysis, we conclude that C. & C.'s failure to exercise reasonable diligence in taking the steps necessary to correct the conditions which led to the cessation of mining rights constituted an abandonment of C. & C.'s rights under the leasehold agreement.

Affirmed in part; reversed in part.

There shall be a rebuttable legal presumption that the failure of a person, firm, corporation, partnership or association to produce and sell or produce and use for its own purpose for a period of greater than twenty-four months, ... oil and/or gas produced from such leased premises constitutes an intention to abandon....

This rebuttable presumption shall not be created in instances (i) of leases for gas storage purposes, or (ii) where any shut-in royalty, flat rate well rental, delay rental, or other similar payment designed to keep an oil or gas lease in effect or to extend its term has been paid or tendered, or (iii) where the failure to produce and sell is the direct result of the interference or action of the owner of such oil and/or gas or his subsequent lessee or assignee. Additional, no such presumption shall be created when a delay in excess of twenty-four months occurs because of any inability to sell any oil and/or gas produced or because of any inability to deliver or otherwise tender such oil and/or gas produced to any person, firm, corporation, partnership or association.