519 S.E.2d 423

Kinsey Martin HOWELL, Plaintiff below, Appellee,

v.

APPALACHIAN ENERGY, INC., a Pennsylvania corporation; Defendant below;

Westar Energy, Inc., a Texas corporation; and Pentex Energy, Inc., a Pennsylvania corporation, Defendants below, Appellants.

Charles E. Tomes and Julie J. Tomes, his wife, Plaintiffs below, Appellees,

v.

Doran & Associates, Inc., a Pennsylvania corporation, Defendant below;

Westar Energy, Inc., a Texas corporation; and Pentex Energy, Inc., a Pennsylvania corporation, Defendants below, Appellants.

No. 25334.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1999.

Decided June 17, 1999.

Donald J. Epperly, Esq., Ancil G. Ramey, Esq., Steptoe & Johnson, Clarksburg, West Virginia, Attorney for the Appellees.

Larry L. Skeen, Esq., Skeen & Skeen, Ripley, West Virginia, Attorney for Appellants Westar Energy, Inc. and Pentex Energy, Inc.

STARCHER, Chief Justice:

In this action on an oil and gas lease, we are asked to determine whether a circuit court erred in granting summary judgment to the plaintiff-lessors, and in so doing hold-

ing that the defendant-lessees had abandoned two oil and gas leases. We are also asked to examine *W.Va.Code*, 36–4–9a [1994], which states that if a lessor fails to operate an oil or gas well for more than 24 months, then both the well (and thereby the oil or gas lease) and any equipment used in operating the well may be rebuttably presumed to be abandoned by the lessee. The Circuit Court of Harrison County, examining evidence that the defendants had failed to operate two wells located on the plaintiffs' properties for approximately 8 years, concluded that the defendants had abandoned the wells located on the plaintiffs' properties. Accordingly, the circuit court declared the leases and equipment used in operating the wells to have been abandoned.

After reviewing the briefs and arguments of the parties and the record from the circuit court, we affirm the circuit court's granting of summary judgment to the plaintiff-lessors.

## I.

### Facts and Background

Plaintiff-appellee Kinsey Martin Howell owns a 25–acre tract of land in Harrison County, West Virginia. By an oil and gas lease dated March 25, 1978 (the "Howell lease"), Mr. Howell leased the land to defendant-below, Appalachian Energy, Inc. ("Appalachian"), for oil and gas exploration for a primary term of 1 year, and a secondary term for "as long thereafter as the said land is operated by Lessee in the production of oil or gas."

Plaintiffs-appellees Charles and Julie Tomes own a 90–acre tract of land near the land owned by Mr. Howell. On March 25, 1978, Mr. and Mrs. Tomes entered into an oil and gas lease (the "Tomes lease") with defendant-below, Doran & Associates, Inc. ("Doran"), thereby allowing Doran to engage in oil and gas exploration on their property for a primary term of 1 year and a secondary term for "as long thereafter as the said land is operated by Lessee in the production of oil or gas." On April 6, 1978, Doran assigned

its interest in the Tomes lease to defendant Appalachian.

Defendant Appalachian commenced drilling a well on Mr. Howell's property and another well on Mr. and Mrs. Tomes' property. After the discovery of gas, Appalachian connected the wells to a meter and to a commercial gas pipeline, and began producing and selling gas from the wells on the plaintiffs' properties.[1] The record suggests that Appalachian also made royalty payments to the plaintiffs in accordance with the terms of the respective leases.

In February 1980, Appalachian assigned its rights to both the Howell lease and the Tomes lease to another company, Energy Minerals, Inc. Energy Minerals, Inc. then assigned both leases to Wood & Locker, Inc., in 1985. At an unknown time thereafter, Wood & Locker filed federal bankruptcy reorganization proceedings under Chapter 11, and during that reorganization apparently changed its name to that held by defendant-appellant Westar. In the same time period, defendant Appalachian reordered its operations and changed its name to that held by defendant-appellant Pentex. Additionally, (as the defendants stated in the circuit court) the defendants were drawn into a "series of long and complicated federal and state law suits and bankruptcy proceedings" involving various oil and gas companies, and in some manner controverting the ownership of the leases with the plaintiffs.

While neither the parties to, nor the purpose of, this other court litigation is apparent from the record, it appears undisputed that at some time in 1994, as a result of that litigation, defendants Westar and Pentex succeeded to the ownership of all right, title and interest in the Howell lease and the Tomes lease.

The plaintiffs contended in the circuit court that from 1989 until the instant lawsuit was filed in 1997, the defendant-lessees failed to produce any oil or gas from the wells located on the plaintiffs' properties. Furthermore, the defendants did not pay any

---

1. The meters and commercial gas pipeline were owned by the customer, Columbia Natural Gas Transmission Corporation.

royalties to the plaintiffs for a period of approximately 8 years.

The defendants introduced no evidence to rebut the plaintiffs' contention that the wells were inoperative for 8 years. In fact, the defendants conceded during discovery that the wells were inactive, and that no royalties had been paid, for at least the 4 years preceding the 1997 filing of the instant lawsuits. However, the defendants alleged that this non-payment and non-production was partly a result of the "long and complicated" state and federal court litigation, and partly a result of market forces. The defendants claim that the court litigation left the defendants' records in disarray and the defendants were unable to locate any of their oil and gas well leases for over 2 years. Once the defendants sorted out the wells in which they had an interest, the defendants discovered that the sole customer of gas from the wells had canceled its gas purchase agreement, removed its meters from Mr. Howell's well and Mr. and Mrs. Tomes' well, and was refusing to purchase any additional gas from those wells.[2]

The plaintiffs filed the instant lawsuits [3] in the Circuit Court of Harrison County on June 11, 1997 seeking a declaration that the defendants had abandoned the wells and equipment located on the plaintiffs' property. Also, the plaintiffs sought a declaration from the circuit court to the effect that the oil and gas leases were null and void because the wells and equipment had been abandoned.

After several months of discovery, the plaintiffs filed motions for summary judgment. In their motions, the plaintiffs contended, based upon the evidence then in the record, that it was undisputed that the defendants had failed to produce oil and gas from the subject wells for a period in excess of 24

months, and had failed to pay any rents or royalties for a period in excess of 24 months. As authority for their motions, the plaintiffs cited to *W.Va.Code*, 36–4–9a [1994], which states that when lessees such as the defendants fail to operate an oil or gas well for more than 24 consecutive months, then the lessee is presumed to have abandoned the well and all equipment used in operating the well. The defendants introduced no evidence to rebut these contentions.

The circuit court, after hearing the arguments of the parties, issued separate but identical orders granting summary judgment to the plaintiffs on January 21, 1998. The circuit court concluded that the defendants had abandoned the wells, and therefore the Howell lease and Tomes lease should be terminated because of that abandonment. Furthermore, the circuit court held that the plaintiffs were entitled to ownership of all of the defendants' equipment on the plaintiffs' land used in the production of oil and gas, because the defendants had similarly abandoned the equipment.

The defendants now appeal the circuit court's orders.

## II.

### Standard of Review

This appeal arises from the circuit court's granting of summary judgment to the plaintiffs-lessors. Our review is *de novo*. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In reviewing summary judgment, this Court will apply the same test that the circuit court should have used initially, and must determine whether "it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the

---

2. In answers to the plaintiffs' written interrogatories, defendant Pentex described the confusing situation faced by the defendants:

 Pentex inherited the operation of this and a number of other wells and leases approximately four years ago as the result of a settlement in a Pennsylvania federal suit, and it has spent approximately two years since that time just in generating lease files and in locating such wells and finding markets for the gas as CNGT [Columbia Natural Gas Transmission Corpora-

tion] had pulled the meters on the wells and shut them in before Pentex assumed their operation. Thus far, despite the exercise of reasonable diligence, since assuming their operation, Pentex has only been able to find a market for the gas from three such wells.

3. The plaintiffs filed separate lawsuits against the defendants. These lawsuits were later consolidated pursuant to Rule 42 of the *West Virginia Rules of Civil Procedure* [1978].

application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). As with the circuit court, we "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," that is, the appellants. *Painter v. Peavy*, 192 W.Va. at 192, 451 S.E.2d at 758.

## III.

### *Discussion*

The defendants, Pentex Energy and Westar Energy, present two separate issues on appeal. First, the defendants contend that the circuit court erred in finding that the leases were abandoned. The defendants argue that because they were making diligent efforts to place the wells back into production, the lapse in production and non-payment of royalties and rents should not be construed as abandonment. Second, the defendants argue that the circuit court erred in finding that they had abandoned their expensive equipment used in the production of oil and gas, and granting ownership of that equipment to the plaintiffs.

We examine these two arguments in turn.

### A.

### *Abandonment of the Wells and Termination of the Lease*

■ The defendants argue that the question of abandonment of a lease by a lessee requires an examination of the intent of the lessee. The defendants take the position that an intent to abandon must be determined by looking to a lessee's conduct and declarations. The evidence in this case, the defendants contend, creates a question of material fact regarding whether the defendants intended to abandon the Howell lease or the Tomes lease.

■ Under a typical oil and gas lease, the lessee must either develop the land, and produce and sell oil and gas, or be deemed to have abandoned the lease. This rule is designed to compel the lessee to develop the land and make the lease beneficial to both the lessee (through the use or sale of oil and gas) and the lessor (through the payment of royalties); the lessee cannot refuse to develop the land, and thereby tie up the land for speculative purposes to the detriment of the lessor.

■ In Syllabus Point 1 of *McCullough Oil, Inc. v. Rezek*, 176 W.Va. 638, 346 S.E.2d 788 (1986) we made clear that an oil and gas lease is intended to be mutually beneficial to both the lessor and the lessee:

> An oil and gas lease (or other mineral lease) is both a conveyance and a contract. It is designed to accomplish the main purpose of the owner of the land and of the lessee (or its assignee) as operator of the oil and gas interests: securing production of oil or gas or both in paying quantities, quickly and for as long as production in paying quantities is obtainable.

We similarly stated the principle in Syllabus Point 3 of *Parish Fork Oil Co. v. Bridgewater Gas Co.*, 51 W.Va. 583, 42 S.E. 655 (1902) where we held that "[w]hen its terms will permit it under the rules of law, an oil lease will be so construed as to promote development and prevent delay and unproductiveness."

In *Parish Fork Oil*, this Court explained that an oil and gas lease is intended to be mutually beneficial to both the lessor and the lessee, and the lessee cannot enter into such a lease solely to tie up the land, and prevent its development by other individuals. We said:

> Until oil is discovered in paying quantities, the lessee acquires no title under such [an oil and gas] lease. It simply gives a right of exploration. After the discovery of oil in paying quantities, it is held that title does vest in the lessee, but there is no case which goes so far as to announce that after mere discovery of oil the lessee, upon the assumption of a vested interest or title, may cease operation, refuse to develop the property, tie up the oil by his lease, and simply hold it for speculative purposes, or to await his own pleasure as to the time of development. A well-settled principle of law is that a contract shall be construed as a whole, and in the light of the purposes and objects for the accomplishment of

which it was made. Oil leases are no exception to the rule, and, as the subject-matter of the lease is peculiar in its nature, the courts have given this principle great latitude in their construction. They are executed by the lessor in the hope and with an expressed or implied condition that the land shall be developed and oil produced. When production takes place, the lease is mutually beneficial. The royalty which it is stipulated in all these leases that the landowner shall receive is generally the moving cause of the execution of the lease. If there is one principle that is asserted in *Steelsmith v. Gartlan* [, 45 W.Va. 27, 29 S.E. 978 (1898) ] more vigorously and with more emphasis than any other it is that the lessee shall proceed to make the lease profitable to both parties, and that he shall not be permitted to tie up the land.

51 W.Va. at 591–92, 42 S.E. at 658 (citations omitted).

 We have previously made it clear that if a lessee fails to diligently pursue operations pursuant to an oil and gas lease, the lessee's inaction may trigger the termination of the lease. We held in Syllabus Point 4 of *Eastern Oil Co. v. Coulehan,* 65 W.Va. 531, 64 S.E. 836 (1909) that:

> The discovery of oil or gas under a lease giving right of exploration and production, unless there is something in the lease manifesting a contrary intention, is sufficient to create vested estate in the lessee in the exclusive right to produce oil or gas provided for therein—a right, however, which may be lost by abandonment, by failure to produce oil or gas, or pursue the work of production, or development of the property.

In other words, the lessee under an oil and gas lease may lose all rights under the lease if the lessee fails to operate the wells, and essentially abandons the leased premises.

The general question of whether a lessee has abandoned a lease involves a determination of whether the lessee intended to abandon the lease. In Syllabus Point 3 of *Lowther v. Miller–Sibley Oil Co.,* 53 W.Va. 501, 44 S.E. 433 (1903), we stated that "[t]o constitute abandonment by the lessee of a lease for oil there must be both an intention to abandon and actual relinquishment of the leased premises." *See also, Smith v. Root,* 66 W.Va. 633, 639, 66 S.E. 1005, 1007 (1910); *Sult v. A. Hochstetter Oil Co.,* 63 W.Va. 317, 329–32, 61 S.E. 307, 313–14 (1908).

We held in *Berry Energy Consultants and Managers, Inc. v. Bennett,* 175 W.Va. 92, 95, 331 S.E.2d 823, 826 (1985) that in the context of an oil and gas lease "[t]he determination of such intent has been facilitated in West Virginia by statute." That statute is *W.Va. Code,* 36–4–9a [1994].

*W.Va.Code,* 36–4–9a creates a "rebuttable legal presumption" of an intent to abandon an oil and gas lease where a lessee fails to produce and sell oil and/or gas from the leased premises for a period in excess of 2 years. The statute states, in pertinent part:

> There is a rebuttable legal presumption that the failure of a person, firm, corporation, partnership or association to produce and sell or produce and use for its own purpose for a period of greater than twenty-four months, subsequent to the first day of July, one thousand nine hundred seventy-nine, oil and/or gas produced from such leased premises constitutes an intention to abandon any oil and/or gas well and oil and/or gas well equipment situate on said leased premises, including casing, rods, tubing, pumps, motors, lines, tanks, separators and any other equipment, or both, used in the production of any oil and/or gas from any well or wells on said leasehold estate.

This statute gives "practical effect to leases for the production of oil and gas in this State[.]" *Berry,* 175 W.Va. at 95, 331 S.E.2d at 826. *W.Va.Code,* 36–4–9a makes clear that a lessee under an oil and gas lease cannot "tie up" land for more than 2 years without producing oil or gas from a well, and implicitly requires the lessee to either make the lease mutually beneficial to the lessee and lessor, or be rebuttably presumed to have abandoned the lease.

The defendant-lessees in this case concede that they failed to sell or produce gas from the wells on the plaintiffs' properties for at least the 4 years preceding the filing of the

instant cases. However, the defendants argue that, while *W.Va.Code*, 36–4–9a creates a rebuttable presumption that the leases in this case were abandoned, that presumption can be rebutted by examining the evidence of the intent of the defendants.

The defendants state that because their records were in disarray after years of litigation, they were unable to determine the oil and gas wells in which they had an interest— essentially arguing that had the defendants known of the wells' existence, they would have operated the wells. Furthermore, before, during and after that time of "lease confusion," the defendants continued to keep expensive equipment to operate the wells on the leased premises. Unfortunately, the defendants allege that the only customer for the gas from the wells had, at an undetermined time and unknown to the defendants, disconnected the wells from its main pipeline and stopped buying the gas, thereby precluding the defendants from producing oil and gas from the wells.

Furthermore, before filing the instant actions, each plaintiff wrote a letter to the defendants declaring that the wells had been abandoned due to lack of production for a period in excess of 2 years, and asking the defendants to either produce gas from the wells or remove their equipment from the properties. The defendants responded to each letter with a check designated as a payment of "shut-in" royalties—even though neither lease provided for shut-in royalties— and an apology indicating that the defendants were attempting to procure a customer to buy gas from the wells. The plaintiffs refused the checks and filed the instant actions.[4]

The defendants contend that the aforementioned conduct and declarations are evidence of an intent not to abandon the Howell lease and the Tomes lease—and further, that such evidence creates a question of material fact precluding summary judgment. We disagree.

■ *W.Va.Code*, 36–4–9a creates a rebuttable legal presumption that if a lessee fails to produce and sell (or produce and use for the lessee's own purposes) oil or gas from the leased premises, pursuant to an oil and gas lease, for a period greater than 24 months, then the lessee shall be deemed to have intended to abandon any oil or gas well situated on the premises.

*W.Va.Code*, 36–4–9a also sets forth four different situations where that legal presumption of an intent to abandon may be rebutted. That *Code* section states, in pertinent part:

> This rebuttable presumption shall not be created in instances (i) of leases for gas storage purposes, or (ii) where any shut-in royalty, flat rate well rental, delay rental or other similar payment designed to keep an oil or gas lease in effect or to extend its term has been paid or tendered, or (iii) where the failure to produce and sell is the direct result of the interference or action of the owner of such oil and/or gas or his subsequent lessee or assignee. Additionally, no such presumption is created when a delay in excess of twenty-four months occurs because of any inability to sell any oil and/or gas produced or because of any inability to deliver or otherwise tender such oil and/or gas produced to any person, firm, corporation, partnership or association.

We find ambiguity in *W.Va.Code*, 36–4–9a in the phrase "this rebuttable presumption shall not be created."[5] The parties in this case do not discuss whether there is a difference between a rebuttable presumption not being created, and a presumption being created and then rebutted. We also have not located any authority discussing this semantic question.

---

4. We find no language in either the Howell lease or Tomes lease allowing the defendants to pay any rents or fees to continue the lease term while the wells are not producing. The lease term was to continue only so long as the defendants operated the land—and therefore the wells—"in the production of oil or gas." Accordingly, we find no obligation on the part of the plaintiffs to have accepted the defendants' offer to pay a "shut-in fee" to continue the lease.

5. Because of this ambiguity, we suggest that the Legislature examine the statute, and consider redrafting its language to make its application easier for landowners and lessees alike.

When this Court is called upon to construe a statute, our primary goal is to give effect to the intent of the Legislature. Syllabus Point 1, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). A statute must be construed in accord with the Legislature's intent, and in a manner that will uphold the law and further justice. The Court must disregard a construction, "though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity." Syllabus Point 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).

It appears that the Legislature intended the four situations listed above in *W.Va.Code*, 36–4–9a to constitute the exclusive means by which a lessee may rebut the previously created "rebuttable legal presumption" that an oil or gas well (or, as discussed in section III.B, equipment used in the production of oil or gas from any such well) has been abandoned. Such a construction would further the statute's goal of protecting landowners from an irresponsible lessee, and encouraging lessees under an oil and gas lease to put wells into production—while simultaneously providing protection to a responsible lessee.

We therefore conclude that the legal presumption that a lessee has abandoned an oil or gas well, or abandoned any equipment used in the production of any oil or gas from such a well, set forth in *W.Va.Code*, 36–4–9a [1994], may only be rebutted in instances where the lessee demonstrates: (1) that the lease is for gas storage purposes; (2) that a shut-in royalty, flat rate well rental, delay rental or other similar payment, agreed to by the lessor and lessee and designed to keep the oil or gas lease in effect or extend its term, has been paid or tendered; (3) that the failure to produce or sell gas or oil from the leased premises is the direct result of interference or other actions of the owner of the oil or gas or his subsequent lessee or assignee; or (4) an inability to sell the oil or gas produced from the leased premises, or an inability to deliver or otherwise tender the oil or gas produced to any person, firm, corporation, partnership or association.

After examining the language of the statute, we reject the defendants' argument that questions of fact remain over whether there was an intent to abandon the wells on the plaintiffs' properties. We believe that the circuit court correctly concluded that no genuine issue as to any material fact remained for jury resolution, and therefore properly granted summary judgment.

The plaintiffs presented the circuit court with unrebutted evidence that the wells on their properties had been inactive for over 8 years. Applying the language of *W.Va.Code*, 36–4–9a, the circuit court correctly concluded that the defendant-lessees failed to produce and sell, or produce and use for their own purposes, oil or gas from the leased premises for a period greater than 24 months—and therefore the defendants were presumed to have intended to abandon the wells situated on the plaintiffs' premises.

The defendants introduced no evidence to rebut this presumption. The defendants' primary response is that the defendants did not know they had an interest in the subject wells because their lease records were in disarray. We do not understand how a record-keeping error by the defendants alleviates their failure to make the wells productive and beneficial to the plaintiffs for 8 years.

Another contention of the defendants is that they were unable to sell any gas produced by the wells because the sole customer disconnected the wells from its main gas pipeline and refused to purchase any additional gas. We agree that the presumption of abandonment created under *W.Va.Code*, 36–4–9a is rebutted when there is a showing that the delay is the result of an "inability to sell any oil and/or gas produced or because of any inability to deliver or otherwise tender such oil and/or gas." However, in this case, the defendants presented no evidence that the reason for the failure to produce from the wells, for the entire 8-year period, was the result of an inability to sell or deliver the gas. Aside from a conclusory statement, the defendants presented no evidence of its unsuccessful efforts to sell gas from the wells, nor any evidence that the inability to sell or

deliver gas was ever contemporaneously communicated to the plaintiffs. The defendants communicated with the plaintiffs only after the plaintiffs wrote letters to the defendants stating that the plaintiffs wanted to terminate the leases due to abandonment—and after the wells had been silent for upwards of 8 years.

We therefore conclude that the circuit court properly presumed that the defendants intended to abandon the wells located on the plaintiffs' properties, and thereby abandoned any interest in the oil and gas on the property under the Howell and Tomes leases.[6] The circuit court's granting of summary judgment on this question is therefore affirmed.

### B.

### Abandonment of the Defendant's Personal Property

■ The defendants contend that the circuit court erred in finding that, in addition to abandoning the wells, the defendants abandoned all of their *equipment and personal property* that was located on the plaintiffs' property and utilized in connection with the production of oil and gas. The circuit court's summary judgment orders gives the ownership of this equipment to the plaintiffs.

The defendants argue that it is unfair to deny the defendants a reasonable time in which to reclaim their equipment. The defendants take the position that the circuit court should have ordered the defendants to plug the wells and remove the equipment, or allow the equipment to remain on the property and require the plaintiff-lessors to pay the defendants for the reasonable value of the equipment.

In Syllabus Points 1 and 2 of *Gartland v. Hickman*, 56 W.Va. 75, 49 S.E. 14 (1904), we held that after an oil and gas lease terminates, the lessee has a reasonable period of time in which to remove any equipment or other personal property from the leased

premises. What constitutes a "reasonable period of time" is normally a question of fact. We stated:

1. The owner of land executes a lease thereon for oil and gas purposes, by which it is agreed that the lessees shall have the privilege at any time to remove therefrom all machinery and fixtures placed on said premises. Under this lease, the lessees and their assignees, for the purpose of exploring for oil and gas, placed on the land an engine, wooden oil-well rig, wooden oil tanks, casing, pipes, rubber belt, and other appliances of like character, necessary for the prosecution of that work. Afterwards the lease was forfeited and terminated for the nonpayment of rental. Held, that said machinery and fixtures did not become parts of the freehold, and that said lessees, or the owners of the machinery and fixtures, had a reasonable time after the termination of said lease in which to remove said property from the land.

2. What is a reasonable time for the removal is to be determined from all the facts and circumstances of the case.

However, we believe that the rule espoused in *Gartland v. Hickman* has been overruled by the adoption of *W.Va.Code*, 36–4–9a [1994]. In addition to creating a presumption that a well has been abandoned, that statute also specifically states that if a lessee under an oil or gas lease fails to produce and sell, or produce and use for its own purpose, oil and gas for a period in excess of 24 months, there is a rebuttable legal presumption that the lessee intended to abandon any "oil and/or gas well equipment situate on said leased premises, including casing, rods, tubing, pumps, motors, lines, tanks, separators and any other equipment, or both, used in the production of any oil and/or gas from any well or wells on said leasehold estate."

---

6. The defendants also take the position that the circuit court erred in declaring the Howell lease and Tomes lease to be entirely null and void due to the abandonment. The defendants argue that, if the leases had been abandoned for any period of time, then the circuit court should have voided the leases only as to the undeveloped portions of

the plaintiffs' properties, and then held a trial and required the defendants to pay to the plaintiffs reasonable royalties and other money damages resulting from the non-production of the wells. In light of the clear language of *W.Va. Code*, 36–4–9a, we find no merit in this argument.

We therefore hold that *W.Va.Code,* 36–4–9a creates a rebuttable legal presumption that if a lessee fails to produce and sell (or produce and use for the lessee's own purposes) oil or gas from the leased premises, pursuant to an oil and gas lease, for a period greater than 24 months, then the lessee shall be deemed to have intended to abandon any oil or gas well equipment, including casing, rods, tubing, pumps, motors, lines, tanks, separators, or any other equipment used in the production of oil or gas from any well or wells located on the premises. To the extent that *Gartland v. Hickman,* 56 W.Va. 75, 49 S.E. 14 (1904) conflicts with this statute, it is hereby overruled.

Analyzing the circuit court's ruling in light of *W.Va.Code,* 36–4–9a, we hold that the circuit court properly granted ownership of the equipment left by the defendants to the plaintiffs. The defendants had neither operated the gas wells nor removed their equipment and other personal property used in the production of gas for a period of approximately 8 years—a period well in excess of the 24 months required by *W.Va.Code,* 36–4–9a—and were therefore properly presumed to have abandoned any equipment or other personal property used in the production of

oil or gas from the wells located on the plaintiffs' properties. As stated previously, the defendants failed, pursuant to *W.Va. Code,* 36–4–9a, to introduce any evidence to rebut the presumption of an intent to abandon both the wells and the equipment.[7] The plaintiffs were therefore statutorily entitled to take possession and ownership of the equipment left on their property.

The circuit court's granting of summary judgment to the plaintiffs on this question must therefore be affirmed as well.

### III.

#### Conclusion

Based upon the foregoing, we affirm the circuit court's orders, both dated January 21, 1998, granting summary judgment to the plaintiffs.

Affirmed.

---

7. We believe that lessees such as the defendants should be allowed a reasonable period of time to remove their equipment, but also believe that the Legislature has statutorily provided that reasonable time period—24 months from the time that production of oil or gas from the well ceases.